UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAREN ALBERT, a minor bn/f ) | |
| JARROD ALBERT, and ) | |
| JARROD ALBERT, individually, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No.  3:02-CV-277 |
| ) | (Phillips) |
| OBER GATLINBURG, INC., and ) | |
| SMOKY MOUNTAIN SNOW SPORT ) | |
| SCHOOL, INC., ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

This is a civil action for personal injuries sustained by Jaren Albert while skiing at Ober Gatlinburg's resort on December 27, 2001. Pending before the court are the following motions: (1) defendant Ober Gatlinburg's motion for summary judgment [Doc. 55]; (2) defendant Smoky Mountain Snow Sport School's motion for summary judgment [Doc. 58]; and (3) plaintiffs' motion for oral argument on the pending motions for summary judgment [Doc. 74].

The parties have filed extensive briefs pertaining to the motions for summary judgment in which they have fully briefed all of the issues and submitted record evidence in support of the parties' positions. The court has reviewed the briefs and evidence submitted, and does not feel that oral argument is necessary. Therefore, plaintiffs' motion for oral argument [Doc. 74] is **DENIED.** For the reasons stated below, Ober Gatlinburg's

motion for summary judgment will be granted in part and denied in part; and Smoky Mountain's motion for summary judgment will be granted in part and denied in part.

## I. Background

On December 27, 2001, 15-year old Jaren Albert went to Ober Gatlinburg ski resort for the purpose of Alpine or downhill skiing. The previous day, Albert had received instructions in skiing from defendant Smoky Mountain Snow Sport School (Snow School). While skiing at the Ober Gatlinburg resort, Albert suffered injuries to her face and left eye as a result of a fall on the ski slope. Albert contends that her injuries resulted from defendants' negligence in permitting skiing on a slope that was unreasonably icy and extra hazardous, and because she received inadequate instruction in skiing from the Snow School. Plaintiff Jarrod Albert has brought this action individually, and on behalf of his daughter Jaren Albert, against defendants alleging negligence which proximately caused personal injury to his daughter.

## II. Standard of Review

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v.*

*Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

### III. Analysis

#### A. Ober Gatlinburg

Defendant Ober Gatlinburg moves for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. In support of the motion, Ober asserts that (1) Jaren Albert was guilty of negligence as a matter of law which bars recovery for her injuries; (2) Jaren's claim is barred by the Tennessee Ski Area Safety and Liability Act (SASLA), T.C.A. § 68-114-101; and (3) Ober is not guilty of any negligence which proximately caused or contributed to Jaren's accident and injuries. Ober has also moved for summary judgment as to the claims of Jarrod Albert, stating that (1) his claims are solely derivative of the claims of Jaren Albert and that failure of her claims precludes any recovery by Jarrod Albert; and (2) that Jarrod Albert signed a valid release agreement contractually preventing him from bringing a claim against the ski operator.

3

First, Ober Gatlinburg asserts that Jaren Albert's negligence bars any recovery against the ski resort as a matter of law. In support of its assertion, Ober Gatlinburg states that Ms. Albert, an inexperienced, beginning skier with limited skiing experience, chose to ski on a slope that she knew was designated for "advanced" skiers. That act of negligence on her part was the sole cause of her fall and her injury. Therefore, her negligence bars recovery against Ober Gatlinburg on any of her claims as a matter of law.

Second, Ober Gatlinburg contends the Ski Area Safety & Liability Act (SASLA), T.C.A. § 68-114-101, governs downhill snow skiing and sets a liability standard different from normal tort liability. Specific duties, responsibilities, and defenses are statutorily created by the SASLA for the sport of downhill skiing. Ober Gatlinburg asserts that the SASLA precludes ski area liability based on risks inherent in the sport of Alpine or downhill skiing. The SASLA provides:

> It is hereby recognized that Alpine or downhill skiing is a recreational sport and the use of passenger tramways associated therewith may be hazardous to skiers or passengers, regardless of all feasible safety measures which can be taken. Therefore, each skier and each passenger has the sole responsibility for knowing the range of such skier's or passenger's own ability to negotiate any alpine, ski trail or associated passenger tramway, and it is the duty of each skier and passenger to conduct such skier or passenger within the limits of such skier's or passenger's own ability, to maintain control of such skier's or passenger's speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of such skier or passenger or others. Except as otherwise specifically provided in this chapter, each skier or passenger is deemed to have assumed the risk of and legal responsibility for any injury to such skier's or passenger's

4

>person or property arising out of such skier's or passenger's participation in Alpine or downhill skiing or the use of any passenger tramways associated therewith. The responsibility for collisions by any skier while actually skiing, with any person or object, shall be solely that of the skier or skiers involved in such collision and not that of the ski area operator.

T.C.A. § 68-114-103.

Ober Gatlinburg asserts Ms. Albert was an inexperienced skier, yet she skied on a slope which she knew was designated as "most difficult" and rated as a "black diamond" slope; and she ignored the posted signs warning her that the slope she was preparing to ski on was not suited to her ability. Despite that knowledge, Ms. Albert skied down Mogul Ridge and suffered a fall. Defendant states that Ms. Albert was not skiing within the limits of her ability and she apparently failed to maintain control of her speed and course, resulting in her fall and injury. Having failed to meet her responsibility under the SASLA of skiing within her ability and maintaining control of her skiing, she is barred by the SASLA from recovering from defendant for her injuries.

Further, defendant states that the SASLA provides that each skier is "deemed to have assumed the risk of and legal responsibility for any injury to such skier's ... person or property arising out of such skier's . . . participation in Alpine or downhill skiing. T.C.A. § 68-114-103. Ms. Albert chose to participate in downhill skiing on the slopes at Ober Gatlinburg, so under the SASLA, she is deemed to have assumed the risk of and liability for the injuries she suffered on December 27, 2001.

5

In support of its motion, Ober Gatlinburg has submitted the affidavit of Thomas Diriwaechter. Mr. Diriwaechter is a certified ski instructor, and has been the Director of Skiing at Ober Gatlinburg since 1998. Mr. Diriwaechter's affidavit states that he is familiar with the SASLA and its requirements. On the day at issue, Mr. Diriwaechter states that all open slopes at Ober Gatlinburg were appropriate for skiing. The open slopes included Mogul Ridge, Upper Bear Run, Castle Run, Cub Way and the Ski School area. More specifically, Dr. Diriwaechter states that the slope where Jaren Albert fell was appropriate for skiing at the time of her fall. He further states that all slopes at Ober Gatlinburg were properly classified pursuant to state law and U.S. industry standards on December 27, 2001. It is Mr. Diriwaechter's opinion that at the time of Jaren Albert's fall, she was an inexperienced skier attempting to ski on a slope that was beyond the limits of her ability which resulted in her falling and sustaining injuries. He also opines that Ober Gatlinburg did nothing in any way to cause or contribute to Ms. Albert's fall and resulting injuries.

Plaintiffs have responded in opposition, asserting that Ober Gatlinburg failed to use reasonable care in deciding to open the ski resort on the day of the accident, failed to close some slopes or warn of ultra hazardous conditions on the slope on which this accident occurred, and failed to designate the slope on which the accident occurred as ultra hazardous, ice-covered, and/or "black diamond," thus breaching its duty to operate in conformity with the SASLA. In support of their response, plaintiffs have submitted the affidavit of James Isham, an expert in the field of snow sports safety and professional ski instruction.

Mr. Isham opines that Jaren hit an icy/muddy section of the ski run which was unmarked, lost control, fell and was injured. Based upon the parties' deposition testimony, Mr. Isham states that the surface conditions on the trails indicated considerable variation. The snow on Cub Way and lower Castle Run was soft, groomed, packed powder texture. The snow surface on Mogul Ridge was icy, with patchy cover and lumpy/chunky earlier in the day. As the day wore on and more skiers skied the upper slopes, the surface became more thinly covered and would be reasonably deemed to be in extra-hazardous condition. When slope conditions change from marginal to extra-hazardous in nature, Mr. Isham states it becomes the obligation and duty of the ski operator to post warnings at the top of each trail notifying skiers that the slopes have changed and that they demand extra caution and attention. Such warnings should have also been posted at the slope condition board at the base of the mountain to provide additional information to skiers. Mr. Isham concludes that Ober Gatlinburg failed to use reasonable care by failing to comply with the SASLA to warn Jaren Albert of the changing conditions on the slopes, which contributed to her fall and injuries.

Jaren and her father each testified that they received skiing instructions in the following areas: snow plow, and side to side. Jaren was able to negotiate the trails by making "S" turns side-to-side down the slope. When she wanted to stop, she attempted to do so by sitting down. After the lesson, Jaren skied ten runs on Cub Way (the easiest trail). The following day, Jaren testified she skied Cub Way for approximately one hour and then moved on to Bear Run, an advanced slope. She skied both Bear Run and Cub Way many times, and made several runs on Castle Run (an intermediate trial). Just prior to

7

lunch, Jaren skied down Mogul Ridge (the most difficult trail). Following lunch, Jaren skied the slopes for approximately two hours. During this time, she skied Bear Run, Cub Way, and Mogul Ridge, falling one or two times. Jaren testified that she was able to ski Bear Run, an advanced slope, without difficulty. She also skied Mogul Ridge, an expert slope, within her ability. Jaren testified that she did not lose control while skiing, until her accident occurred on the upper portion of Castle Run approximately 30 yards below Mogul Ridge.

Trevor Duhon provided a written statement of his eyewitness account of Jaren's fall. He indicated that she fell on upper Castle Run. "She was coming down, she slipped and started sliding on her butt, she tried to stop sideways, she started going head over heels for about 10 feet, then her ski came off, hit her in the head, and she was out."

The SASLA was enacted by the Tennessee legislature to define the responsibility of skiers and ski area operators, including assigning the responsibility for the inherent dangers of skiing. 1978 Tenn. Pub. Acts, Chapter 701. While the provisions at issue in the present case concern the protections for operators against liability claims, the SASLA also contains a number of provisions concerning signage and other duties of ski area operators. The intent behind the liability provisions of the Act is to protect ski area operators from lawsuits for falls and collisions in circumstances that cannot be made risk free given the inherent dangerousness of skiing. *Id.* However, the Tennessee Court of Appeals has read the statute narrowly and held that it does not protect operators from their own negligence nor provide them with blanket immunity. *Terry v. Ober Gatlinburg,* 1998 WL 54700 (Tenn.App. 1998) (perm.app.denied July 13, 1998).

8

Plaintiffs state that Ober Gatlinburg owed a duty of reasonable care under the circumstances, in addition to their statutory duties, not to expose a skier to risks at the resort which were not an inherent risk of skiing. Plaintiff's expert witness, Mr. Isham testified that the slope on which Jaren fell had become extra-hazardous and that Ober Gatlinburg failed to use reasonable care by failing to comply with the SASLA to warn skiers of the changing conditions on the slopes. On the other hand, Ober's expert witness, Mr. Diriwaechter, testified that all open slopes at Ober Gatlinburg were appropriate for skiing. In particular, Mr. Diriwaechter testified that the slope where Jaren fell was appropriate for skiing at the time of her fall. Mr. Diriwaechter opined that Jaren's fall and injuries resulted from her attempting to ski a slope that was beyond the limits of her ability. Jaren Albert testified that she was able to ski the slopes within her ability and had done so the previous day and for several hours prior to her accident. It is clear to the court that there exists questions of fact which preclude summary judgment. Whether Ober Gatlinburg failed to exercise reasonable care when it opened the ski resort to the public on December 27, 2001; whether the conditions encountered by Jaren Albert that day were an inherent risk of skiing; and whether Jaren Albert attempted to ski a slope beyond the limits of her ability, are all questions of fact to be resolved by the jury. Because there are disputed issues of material fact as to whether Jaren's accident was the result of an inherent risk of skiing or the result of Ober Gatlinburg's negligence, defendant's motion for summary judgment will be denied.

### B. Release Signed by Jarrod Albert

Finally, Ober Gatlinburg asserts that the claims of Jarrod Albert are barred by the release he signed on behalf of himself and his minor daughter, Jaren. The release at issue stated as follows:

> **I HAVE READ THE AGREEMENT (SECTION 1) ON THE BACK OF THIS FORM RELEASING THE RESORT AREA FROM LIABILITY. I VOLUNTARILY AGREE TO THE TERMS OF THAT AGREEMENT.**
>
> **User's signature: /s/ Jaren Albert      Date: 12-27-01**
>
> **If user is a minor, parent must read the following and sign below.**
>
> I understand and accept full responsibility for the use of this ski equipment to my minor child and hereby release, indemnify, and hold harmless the provider of this ski equipment and the area operator for any claims brought by my minor child as a result of any injuries or damages sustained while engaging in the activity of snow skiing.
>
> **Parent's signature: /s/ Jarrod Albert      Date: 12-27-01**

Ober Gatlinburg argues that by signing the release, Jarrod Albert, individually, accepted the responsibility to release, indemnify and hold harmless the ski resort for claims brought by his minor child as a result of any injuries or damages she might sustain while engaged in the activity of snow skiing. Thus, defendant argues that Mr. Albert should be precluded from recovering for the damages he sustained in his individual capacity because of his daughter's fall at the ski resort.

Plaintiffs respond that material fact questions exist as to whether Ober Gatlinburg misrepresented the conditions which existed on the slopes on the day Jaren was injured. Plaintiffs contend that Ober Gatlinburg made material misstatements of fact when it represented to the public that it had created a snow base of 30 to 45 inches, and that a jury could conclude that this material misrepresentation of fact constitutes fraud which would render the release void.

This court has previously found the release void as to Jaren Albert because it is well settled in Tennessee that a guardian may not waive the rights of an infant or an incompetent. However, the Tennessee courts have held that a parent signing a release like the one at issue here, is precluded from recovering for the loss of services and medical expenses resulting from the child's injury. *See Childress v. Madison County,* 777 S.W.2d 1 (Tenn.App. 1989); *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242 (Tenn.App. 1991). This rule is subject to exception: Exculpatory clauses purporting to contract against liability for intentional conduct, recklessness or gross negligence are unenforceable. *See Childress,* 777 S.W.2d at 5*; Adams v. Roark,* 686 S.W.2d 73 (Tenn. 1985). Plaintiffs' complaint has not alleged intentional, reckless or grossly negligent conduct, their claims are couched in terms of simple negligence. The release in this case is clear and unambiguous. Jarrod Albert acknowledged that Jaren would be participating in snow skiing at his own risk. He further agreed to indemnity defendants "for any claims brought by my minor child as a result of any injuries or damages sustained while engaging in the activity of snow skiing." Therefore, the release is valid with respect to Jarrod Albert's

11

right to recover for loss of services and medical expenses for his child. Accordingly, summary judgment will be granted to Ober Gatlinburg on the claims of Jarrod Albert.

### C. Smoky Mountain Snow Sport School

The Snow School asserts that it is entitled to summary judgment on plaintiffs' claims because (1) the Snow School did not owe a duty to plaintiffs at the time of Jaren's accident; and (2) the undisputed facts show that no acts or omissions of the Snow School caused plaintiffs' alleged injuries.

In support of its motion, the Snow School submits the affidavit of Jim Cottrell. Mr. Cottrell has been the Ski School Director for the French-Swiss Ski College at Blowing Rock, North Carolina for the past 36 years. Mr. Cottrell stated that the responsibility of a ski school is to provide coaching or ski instruction to students for a designated period of time, beginning from the time the students meet at the ski school area until they are released at the end of the lesson. Instructors at ski schools have no control over or responsibility for choices that students make after a lesson is concluded. He further stated that the goal of a beginner lesson is to help students learn the basic skills needed to ski beginner terrain. A beginner lesson should include instruction in the following areas: equipment orientation, getting up, basic ski posture (position), walking on flat terrain, walking up slight inclines, sliding, wedging, turning around on an incline, direction change, turning on beginner terrain, use of a lift, and safety. In his opinion, the beginner lesson plan developed by the Snow School included those elements. He further stated that a beginner lesson is not designed to teach the most advanced skills needed to ski advanced terrain

or all types of snow conditions. He opined that the Snow School had no responsibility to plaintiffs at the time of the accident because the Snow School's responsibility ended when the lesson ended; the Snow School did not have a responsibility to teach plaintiffs how to ski on advanced slopes during their beginner lesson; and the Snow School did not have a responsibility to teach the plaintiffs how to ski on all snow conditions. The Snow School had a responsibility only to teach plaintiffs in the context of the conditions present at the time and place of the lesson.

The Snow School asserts it did not owe a duty to Jaren Albert at the time of her accident because its responsibility to her ended when plaintiffs' ski lesson ended on December 26. Moreover, the Snow School did not have a responsibility to teach Jaren how to ski on the snow conditions present on the advanced slope where the accident occurred. The Snow School asserts it had no control over or responsibility for the choices that Jaren made after her lesson had concluded. Further, the Snow School did not have a duty to teach Jaren how to ski on advanced terrain during her beginner lesson. Finally, the Snow School asserts that no causal connection exists between the ski lesson taught by the school and Jaren's accident. Beginner lessons are not designed to teach students the advanced skills needed to ski on advanced terrain; therefore, not even a "perfect" beginner lesson would have prevented Jaren's accident which took place on advanced terrain.

In response, plaintiffs state that material factual issues exist as to whether the Snow School actually provided the ski lesson contracted for and whether such deficient ski lesson was a proximate cause of plaintiffs' injuries. Jaren and Jarrod Albert testified that

13

only a 5-10 minute lesson was provided and that the only elements covered included the snow plow and side-to-side.

Plaintiffs' expert witness, James Isham reviewed the lesson plan outline provided by the Snow School and stated that if all the things outlined were taught, the lesson would take more than an hour for students to learn. The Alberts stated that the lesson took less than ten minutes. Mr. Isham states that there appears to have been no substantial information given to the Alberts regarding: (1) the conditions of the mountain; (2) where they could safely ski; (3) how to match each skiers' ability with the slope of choice; (4) how to effectively execute a stop while skiing, and (5) the "Skiers Responsibility Code." In his opinion, the lesson time and content were limited and failed to cover any safety issues, signage or slope difficulty information. Mr. Isham opined that the Snow School failed in its duties to give a complete lesson to the Alberts on the night of December 26. He testified that the lack of teaching the Skiers Responsibility Code, trail signage, and successful methods for stopping, all fell below minimum standards and were proximate contributing causes to plaintiffs' injuries. Mr. Isham further opined that the Snow School failed to use reasonable care by not giving adequate information in the lesson.

The expert witnesses for the respective parties in this case disagree on whether the Snow School provided the Alberts with an adequate lesson in beginner skiing on December 26. Defendant's expert witness, Mr. Cottrell, stated that the goal of a beginner lesson is to help students learn the basic skills needed to ski beginner terrain, and in his opinion, the Snow School's lesson plan was adequate to meet that goal. In contrast,

14

plaintiff's expert witness, Mr. Isham, after reviewing the same lesson plan, stated that if all the things outlined were taught, the lesson would take more than an hour. The Alberts testified that the lesson lasted no more than 5-10 minutes, and that the only elements covered included the snow plow and side-to-side. Mr. Isham further testified that, in his opinion, an adequate beginner ski lesson should include information regarding the conditions on the mountain, where the Alberts could safely ski, how to match their ability with the slope of choice, how to effectively execute a stop while skiing, and the Skiers' Responsibility Code.

There exists material issues of fact as to whether the Snow School did in fact give an adequate lesson to the Alberts on December 26. Because factual questions exist concerning the adequacy of the ski lesson taught by the Snow School and whether that lack of instruction was a proximate cause of Jaren's fall and injuries, a jury must determine the facts in dispute, and summary judgment is not appropriate. Accordingly, Smoky Mountain Snow Sport School's motion for summary judgment as to the claims of Jaren Albert will be denied.

The Snow School adopted Ober Gatlinburg's motion for summary judgment as to the claims of Jarrod Albert. For the reasons stated above, the court finds that the release signed by Jarrod Albert waives his right to recover for the loss of services and medical expenses for his child. Accordingly, Smoky Mountain Snow Sport School's motion for summary judgment as to the claims of Jarrod Albert will be granted.

## Conclusion

For the reasons stated above, defendant Ober Gatlinburg's motion for summary judgment [Doc. 55] is **GRANTED IN PART AND DENIED IN PART**; the motion is **DENIED** as to the claims of Jaren Albert and **GRANTED** as to the claim of Jarrod Albert. Likewise, defendant Snow School's motion for summary judgment [Doc. 58] is **GRANTED IN PART AND DENIED IN PART;** the motion is **DENIED** as to the claims of Jaren Albert and **GRANTED** as to the claim of Jarrod Albert. Plaintiffs' motion for oral argument [Doc. 74] is **DENIED.** The parties will prepare the case for trial.

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge